**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LOYAL BARRY GASKIN, JR., | : |
| | : |
| plaintiff, | : |
| | : |
| v. | : CASE NO. 3:18-cv-01978(RAR) |
| | : |
| NANCY A. BERRYHILL,[1] | : |
| ACTING COMMISSIONER OF | : |
| SOCIAL SECURITY, | : |
| | : |
| defendant. | : |

**<u>RULING ON PENDING MOTIONS</u>**

Loyal Barry Gaskin, Jr. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits on September 28, 2018.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing or remanding his case for a hearing (Dkt. #27-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #28-2.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is GRANTED and the Commissioner's motion to affirm is DENIED.

---

[1] Andrew Saul is the new Commissioner of Social Security and has been added as a party to this action automatically.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on July 9, 2015.  (R. 318.)[4]  Plaintiff alleged a disability onset date of September 1, 2012.  (R. 318.)  At the time of application, plaintiff alleged that he suffered from depression, hepatitis C, bipolar, ADHD, mood disorder, and anxiety.  (R. 91.)  The initial application was denied on October 26, 2015, and again upon reconsideration on March 3,

---

Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  Id.

[4] The Court cites pages within the administrative record as "R. ___."

2016.  (R. 188-192, 194-197.)  Plaintiff then filed for an
administrative hearing which was held by ALJ Matthew Kuperstein
(hereinafter the "ALJ") on November 6, 2017.  (R. 46-89.)  The
ALJ issued an unfavorable decision on November 29, 2017.  (R.
12-27.)  Plaintiff filed a request for review with the Appeals
Council on January 24, 2018.  (R. 300-302.)  The Decision Review
Board denied plaintiff's request for review on September 28,
2018.  (R. 3-8.) Plaintiff then filed this action seeking
judicial review.  (Dkt. #27-2.)

**DISCUSSION**

Plaintiff asserts that the ALJ failed to develop the
record, violated the treating physician rule, and that the ALJ's
findings at step five are not supported by substantial evidence.
(Pl. Br. 1, 11, 18.)  Based on the following, the Court finds
that while the ALJ's opinion is supported by substantial
evidence and the ALJ did not err at step five, the ALJ violated
the treating physician rule.   The Court therefore remands the
ALJ's decision.

**I.   The ALJ Did Not Fail to Develop the Record**

Plaintiff asserts that the ALJ failed to develop the record
by not obtaining all of plaintiff's medical records during the
relevant period.  Plaintiff further asserts that the ALJ erred
by not requesting updated medical source statements from
plaintiff's treating physicians.  The Court disagrees.

An ALJ has an affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts, 94 F.3d at 37-38).

A.  There was not an obvious gap in the record due to the missing medical evidence.

Plaintiff argues that there was an obvious gap in the record because a number of plaintiff's medical records were missing from the record. (Pl. Br. 1-11.)  Specifically, plaintiff states that the record was missing treatment notes from Waterbury Hospital from September 1, 2010 to July 24, 2013, and December of 2013; all records from CT Counseling; APT medical records following October 2014; medical records from Healthy Minds following plaintiff's date of last insured (DLI); and any medical records demonstrating plaintiff's treatment of Hepatitis C prior to the ALJ hearing. (Pl. Br. 1-4.)  The Court disagrees.

"The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record: '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Santiago, 2011 WL 4460206, at *2 (quoting Shinseki v. Sanders, 556 U.S. 396, 410 (2009)).  Where "[t]he plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist[,] . . . [t]hat argument is insufficient to carry his burden." Santiago, 2011 WL 4460206, at *2 (rejecting that the ALJ was required to obtain additional medical records where the plaintiff did not attempt to obtain the medical records following the decision or indicate the importance of the records).

While plaintiff lists a number of medical records that he believes may be missing, plaintiff does not even suggest that the medical records will demonstrate he is disabled or that the ALJ's opinion is not supported by substantial evidence. Plaintiff merely takes issue with their absence.  As indicated in Santiago, such an assertion is insufficient to warrant remand.

Further, plaintiff is unsure that all the evidence in question even exists.  Plaintiff believes there are missing medical records from APT Foundation merely because the notes from the period between January 13, 2015 to August 3, 2017 are

not as voluminous as those from July 2013 to October 2014.  (Pl.

Br. 2.)  Plaintiff does not know if he was treated more than

what is reported in the records. (Pl. Br. 2-3).  Instead, he

only knows that he continued to receive treatment during that

time. (Pl. Br. 2-3.)  Contrary to plaintiff's assertion,

plaintiff's counsel specifically told the ALJ that the APT

Foundation treatment notes were complete.  (R. 49.)

Plaintiff further asserts that because he was diagnosed

with Hepatitis C there should be treatment notes demonstrating

his treatment during the relevant period.  (Pl. Br. 4.)

Plaintiff does not allege where he received treatment for his

Hepatitis C or during what time period.  (Pl. Br. 4.)  Further,

plaintiff's assertion directly contradicts the record which

demonstrates that, although diagnosed with Hepatitis C, he was

not treated for it during the relevant period.  (R. 653, 755.)

Most recently, plaintiff told his physicians on April 26, 2015 —

just eight months before plaintiff's DLI — that he has never

received Hepatitis C treatment.  (R. 755.)  Therefore, there is

nothing to indicate that the alleged medical records exist.

Plaintiff asserts there was an obvious gap in the record

because there are no medical records from CT Counseling in the

record.  (Pl. Br. 2.)  Plaintiff cites to a note from July 25,

2013 from the APT Foundation in which plaintiff states he is

currently being treated at CT Counseling.  (R. 652.)  However,

plaintiff neglects to point out that the note also recorded that he stated that his insurance "dropped" and he was seeking a transfer to another facility for treatment.  (R. 652.)  On August 9, 2013, the APT Foundation recorded that plaintiff had transferred from CT Counseling to the APT Foundation.  (R. 641.) Thus, the medical records do not indicate that plaintiff would have any additional treatment notes from CT Counseling Center following July 25, 2013 as plaintiff suggests.

Finally, while plaintiff takes issue with the lack of evidence from Healthy Minds Psychiatric Services, plaintiff specifically told the ALJ that the medical records from Healthy Minds Psychiatric Services were complete.  (R. 49.)

Plaintiff's assertion essentially asks the ALJ to second guess the medical evidence by asking for more evidence even after being told by plaintiff that the record was complete.  See (R. 49.)  Not only has plaintiff failed to demonstrate any significance on behalf of the medical records he lists, but he fails to establish that such records are likely to exist.

Plaintiff has thus failed to establish that the missing records are significant.  Therefore, the ALJ did not err by failing to request the additional medical records.

B. <u>The ALJ did not fail to develop the record by not
requesting updated medical source statements from Dr.
Marienfeld or plaintiff's other doctors at the APT
Foundation.</u>

Plaintiff asserts that the ALJ failed to develop the record
by not requesting an updated medical source statement from Dr.
Marienfeld or any of plaintiff's other doctors at the APT
foundation who treated plaintiff at the time of the hearing.
The Court disagrees.

A court must remand "where 'the medical records obtained by
the ALJ do not shed any light on the [claimant's RFC], and
[where] the consulting doctors did not personally evaluate' the
claimant." <u>Martinez v. Berryhill</u>, No. 3:17-cv-843 (SRU), 2019
WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting <u>Guillen v.
Berryhill</u>, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary
order)).  "The record is insufficient when '[t]he medical
records discuss [the claimant's] illnesses and suggest treatment
for them, but offer no insight into how [the] impairments affect
or do not affect [the claimant's] ability to work, or [his]
ability to undertake the activities of daily life.'" <u>Martinez</u>,
2019 WL 1199393, at *11 (alterations in original) (quoting
<u>Guillen</u>, 697 F. App'x at 109).

However, "remand is not always required when an ALJ fails
in his duty to request opinions, particularly where . . . the
record contains sufficient evidence from which an ALJ can assess

the petitioner's residual functional capacity." Tankisi v.
Comm'r of Soc. Sec., 521 Fed. Appx. 29, 33-34 (2d Cir. 2013).
The ALJ is not required to acquire an opinion from the
plaintiff's treating source where the ALJ's opinion is
consistent with a consultative examiner and "the ALJ also [has]
all of the treatment notes from" the plaintiff's treating
physician. Pellam v. Astrue, 508 Fed. Appx. 87, 89-90 (2d Cir.
2013).

An ALJ does not have a duty to recontact a treating
physician for an updated opinion where the record is sufficient
for the ALJ to render a determination as to plaintiff's residual
functional capacity ("RFC") determination. Sweeting v. Colvin,
No. 12-CV-917 DNH/CFH, 2013 WL 5652501, at *5 (N.D.N.Y. Oct. 15,
2013). In Sweeting, the court determined that the ALJ did not
err by failing to recontact plaintiff's treating physician for
an updated opinion although the opinion was issued almost two
and a half years before plaintiff's ALJ hearing and over a year
after plaintiff's alleged onset date. See id. at *1, *5. The
court found that plaintiff failed to present evidence that his
functional limitations changed since the original opinion, and
the ALJ's opinion was supported by sufficient medical records,
the treating physician's opinion, and the consulting examiner's
opinion. Id. at *5.

Dr. Marienfeld provided a filled out mental impairment questionnaire from the APT Foundation on April 29, 2014.  (R. 371, 656–658.)  Dr. Marienfeld reported that she had been treating plaintiff monthly for the last three months.  (R. 656.)  Dr. Marienfeld reported that plaintiff had made significant improvement and his cognitive status improved with medication. (R. 656.)  Dr. Marienfeld noted that plaintiff had no problem taking care of his personal hygiene, caring for physical needs, using good judgment regarding safety and dangerous circumstances, asking questions or requesting assistance, and carrying out single-step instructions.  (R. 371, 656–657.)

Dr. Marienfeld further noted that plaintiff had a slight problem with using appropriate coping skills to meet ordinary demands of a work environment, interacting with others in a work environment, getting along with others without distracting them or exhibiting behavior extremes, and carrying out multi-step instructions.  (R. 371, 656–657.)  Dr. Marienfeld noted that plaintiff had an obvious problem handling frustration appropriately, respecting/ responding to others in authority, focusing long enough to finish assigned simple activities or tasks, changing from one simple task to another, performing basic work activities at a reasonable pace/ finishing on time, and performing work activity on a sustained basis.  (R. 371, 656–657.)

12

Plaintiff's DLI is December 31, 2015.  (R. 17.)  Dr. Marienfeld issued her response to the mental impairment questionnaire on April 29, 2014.  (R. 658.)  Thus, Dr. Marienfeld's opinion was issued one year and eight months before plaintiff's DLI and over a year and a half after plaintiff's alleged onset date of September 1, 2012.  (R. 318.)

Like Sweeting, plaintiff does not assert that his condition worsened and therefore Dr. Marienfeld's original findings were inconsistent with later treatment.  Plaintiff asserts that the ALJ is required as a matter of law to request updated treating physicians' opinions whenever an opinion is rendered before a plaintiff's DLI.  As an opinion from a treating physician is not required in all circumstances, it certainly cannot be true that all treating physician opinions must occur at the end of, or close to the end of, the relevant period.  See Sweeting v. Colvin, No. 12-CV-917 DNH/CFH, 2013 WL 5652501, at *5 (N.D.N.Y. Oct. 15, 2013)(updated treating physician opinion not required where plaintiff failed to demonstrate its importance); see also Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019)(a treating physician's opinion is only required where the record is incomplete without it); Pellam v. Astrue, 508 Fed. Appx. 87, 89–90 (2d Cir. 2013)(same); Tankisi v. Comm'r of Soc. Sec., 521 Fed. Appx. 29, 33–34 (2d Cir. 2013) (a treating physician's opinion is not required where

"the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.")

Not only does plaintiff not present evidence that his functional limitations changed since the original opinion, the ALJ's opinion[5] was supported by sufficient medical records.  The ALJ determined that plaintiff

> had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] was limited to simple, routine, and repetitive tasks with one to two step commands.  The [plaintiff] would further be limited to work with the general public only 50 percent of the time, to work with coworkers only 70 percent of the time and to work where there is no collaborative work and no teamwork with his coworkers.

(R. 21.)

 Plaintiff testified that he is "really touchy" when receiving feedback and is unable to work around other people. (R. 69, 70.)  Plaintiff asserts that he is very argumentative and could not handle being approached by a stranger on the street.  (R. 79, 80.)  However, plaintiff's examining physicians routinely noted that, although depressed, plaintiff was alert, engaged, focused, and had appropriate behavior.  (R. 614, 634, 637, 676.)  Plaintiff also maintained full custody of his daughter from age 3 to adulthood.  (R. 636.)

---

[5] As plaintiff only objects to the ALJ's failure to request updated treating source statements from plaintiff's mental health specialists, the Court will only examine the sufficiency of the ALJ's mental RFC determination in this section.

Plaintiff further asserts that his memory is so limited that he could not tell you what TV show he just finished watching, his appointments, or be able to give directions to a stranger.  (R. 80, 81.)  However, plaintiff reported improvement in his mood disorder, concentration, depression, and anxiety with medication and his physicians noted that he was stable. (R. 622, 623, 628, 635-36, 643, 669, 685, 689, 694, 698, 703.) Plaintiff's concentration and speech were noted to be within normal limits.  (R. 637.)  While plaintiff did report on January 13, 2015 and April 14, 2015 that he forgot about his appointment, he noted that it was because he had stopped taking his medication.  (R. 688, 691.)

Plaintiff testified that he is anxious around people.  (R. 61.)  However, plaintiff also reported that he would be starting school three evenings a week, and plaintiff's physicians recommended monthly group counseling.  (R. 614-15, 626, 641, 681, 1075, 1080.)  Plaintiff also testified that his main form of transportation is the bus.  (R. 68.)

In addition to the medical evidence, medical expert Dr. Nathan Strahl testified at the ALJ hearing as to plaintiff's limitations based on the medical records.  (R. 51-59.) Foremost, Dr. Strahl testified that there was sufficient evidence in the record to render an RFC determination.

Dr. Strahl stated that there is no evidence in the record that plaintiff has any severe recurrent problems. (R. 54.) Dr. Strahl also testified to the following: that plaintiff's more predominant diagnosis is anxiety; plaintiff may have ADHD but it resolved with medication; the medical record does not demonstrate an ongoing problem with plaintiff's bipolar; and there lacks the mental health treatment for a more definitive diagnosis of depression or any evidence of PTSD. (R. 55-57.)

Dr. Stahl further opined that plaintiff should be limited to simple, routine, repetitive tasks, one-two-step commands and work mostly independent although he could be around co-workers 70 percent of the time and the general public 50 percent of the time. (R. 58.) Dr. Stahl's opinion is consistent with the medical record, Dr. Marienfeld's opinion, and the ALJ's RFC determination.

Therefore, not only does plaintiff not present evidence that his functional limitations changed since the original opinion, the ALJ's mental RFC determination was supported by sufficient medical records. The ALJ's determination was also consistent with the opinions of Dr. Stahl and Dr. Marienfeld. Therefore, the ALJ was not required to seek updated medical source statements from Dr. Marienfeld or plaintiff's other APT Foundation treating physicians.

**II.   The ALJ Violated the Treating Physician Rule**

Plaintiff asserts that the ALJ failed to provide an adequate explanation as to why the opinions of Dr. Marienfeld and clinician Virginia Taverner were not entitled to controlling weight.  The Court agrees.

The medical opinions of treating physicians are generally given more weight than other evidence.  The treating physician rule stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the

opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02-CV-103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors.  20 C.F.R. § 404.1527.  It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5).

After considering the relevant factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing (citing Burgess v. Astrue, 537

F.3d 117, 129 (2d Cir. 2008))(alteration in original).   The ALJ
may not simply substitute his own judgment for that of the
treating physician, and failure to provide good reasons for the
weight given to a treating physician's opinion is grounds for
remand.   Id.

"SSA regulations provide a very specific process for
evaluating a treating physician's opinion" and failure to
*explicitly consider*" any of the named factors is grounds for
rejecting the ALJ's decision.   Greek, 802 F.3d 370, 376 (2d Cir.
2015) (emphasis added).   However, an ALJ is not required to
explicitly cite to the treating physician rule or its factors.
Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017).
It is sufficient that the ALJ substantively reference the rule
and provide good reason for not assigning a plaintiff's treating
physician controlling weight.   Id.

The ALJ assigned Dr. Marienfeld's opinion some weight.   The
ALJ noted that while the opinion was generally consistent, it
did not contain any specific functional limitations and was
missing a page.  (R. 25.)  The ALJ assigned Licensed Alcohol and
Drug Counselor, Ms. Virginia Taverner's opinion little weight.
(R. 25.)  The ALJ determined that Ms. Taverner did not qualify
as a treating physician and there is no evidence that the co-
signing doctor ever treated the plaintiff.  (R. 25.)  The ALJ

further stated that Ms. Taverner's opinion was not supported by
medically acceptable clinical techniques.  (R. 25.)

A. <u>Ms. Taverner's opinion is not entitled to controlling
   weight</u>

Plaintiff erroneously argues that Ms. Taverner's opinion is
entitled to controlling weight.  Ms. Taverner is a counselor and
not a treating physician entitled to controlling weight.
<u>Wiggins v. Colvin</u>, No. 3:13CV1181 (MPS), 2015 WL 5050144, at *2
(D. Conn. Aug. 25, 2015) (licensed professional counselors are
not acceptable medical sources).  However, where the opinion is
cosigned by an acceptable medical source, the opinion should be
evaluated according to the treating physician rule.  <u>Id.</u>

Nevertheless, "[w]hen an other source's opinion is co-
signed by an acceptable medical source, but there are no records
or other evidence to show that the [acceptable medical source]
treated [plaintiff], the [other source's] opinion does not
constitute the opinion of the [acceptable medical source]."
<u>Malave v. Berryhill</u>, No. 3:16CV00661(SALM), 2017 WL 1080911, at
*5 (D. Conn. Mar. 22, 2017) (quoting <u>Goulart v. Colvin</u>, No.
3:15CV1573(WIG), 2017 WL 253949, at *4 (D. Conn. Jan. 20, 2017))
(alterations in original)(internal quotation marks omitted).

Ms. Taverner's opinion was co-signed by Dr. Nelson
Campbell.  (R. 663.)  However, as the ALJ noted, there is no
evidence that Dr. Campbell treated plaintiff.  (R. 25.)

Plaintiff fails to assert or present any evidence that Dr. Campbell ever treated him.  As such, Ms. Taverner's opinion is not entitled to controlling weight.

As an "other source" who treated plaintiff, Ms. Taverner's opinion is important.  Drysdale v. Colvin, No. 14-CV-01722 SN, 2015 WL 3776382, at *4 (S.D.N.Y. June 16, 2015).  "[T]he ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, [however,] those opinions do not demand the same deference as those of a treating physician."  Genier v. Astrue, 298 Fed. Appx. 105, 108 (2d Cir. 2008).  "[T]he ALJ [is] free to discount [evidence of other sources] in favor of the objective findings of other medical doctors."  Id. at 108–109.

Ms. Taverner opined that plaintiff had no problems taking care of personal hygiene; caring for physical needs; using good judgment regarding safety and dangerous circumstances; respecting/ responding appropriately to others in authority; and getting along with others without distracting them or exhibiting behavioral extremes.  (R. 661–662.)

Ms. Taverner opined that plaintiff would have a slight problem with interacting appropriately with others in a work environment; asking questions or requesting assistance; carrying out single-step instructions; changing from one task to another; and performing basic work activities at a reasonable pace/

finishing on time.  (R. 661–662.)  Ms. Taverner also opined that plaintiff would have an obvious problem handling frustration appropriately.  (R. 661.)

Additionally, Ms. Taverner opined that plaintiff would have a serious problem using appropriate coping skills to meet ordinary demands of the work environment; carrying out multi-step instructions; and focusing long enough to finish assigned simple activities or tasks.  (R. 661–662.)  Finally, Ms. Taverner opined that plaintiff would have a very serious problem performing work activities on a sustained basis.  (R. 662.)

The ALJ gave Ms. Taverner's opinion little weight because Ms. Taverner is not a treating source and because Ms. Taverner's conclusions are not supported by medically acceptable clinical techniques.  (R. 25.)  The ALJ's conclusion is supported by substantial evidence.  As detailed above, the medical record supports far less extreme limitations than Ms. Taverner hypothesized.  Notably, neither Dr. Strahl nor Dr. Marienfeld opined such serious limitations.  (R. 51–59, 370–371, 656–658.)

As Ms. Taverner's opinion is not entitled to controlling weight, the ALJ did not violate the treating physician rule by according the opinion less than controlling weight.  Similarly, because substantial evidence supports the ALJ's determination that Ms. Taverner's opinion is not supported by the record, the ALJ did not err by assigning her opinion little weight.

B. <u>The ALJ violated the treating physician rule by assigning Dr. Marienfeld's opinion less than controlling weight</u>

Dr. Marienfeld is a doctor who treated the plaintiff and therefore is entitled to controlling weight so long as her opinion is consistent with the record and acceptable medical clinical techniques.  Because the ALJ assigned Dr. Marienfeld's opinion less than controlling weight, he was required to provide good reason for his decision to do so.

The ALJ violated the treating physician rule.  The ALJ noted that Dr. Marienfeld is a doctor and her opinion is generally consistent with the ALJ's RFC determination, however, her opinion lacks any specific functional limitations.  (R. 25.) The treating physician rule makes clear that a treating physician must be accorded controlling weight so long as his or her opinion is consistent with substantial evidence in the record and well supported by medically acceptable clinical and laboratory diagnostic techniques.  <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).

The ALJ is not permitted to discount the opinion of a treating physician merely because it lacks specificity.  <u>Rivera v. Berryhill</u>, No. 17-CV-991 (JLC), 2018 WL 4328203, at *12–13 (S.D.N.Y. Sept. 11, 2018)(reversing the ALJ for rejecting the treating physician's opinion because it failed to articulate specific functional limitations).  <u>Poulton v. Astrue</u>, No. 07-CV-

6258, 2008 WL 941715, at *8 (W.D.N.Y. Apr. 4, 2008)("The ALJ erroneously found that the treating physician's opinions were not persuasive because they did not set forth any specific functional limitations.").  Indeed, where the opinion is vague, the ALJ must recontact a treating physician.  Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013).

The ALJ failed to accord Dr. Marienfeld's opinion controlling weight, even though it was consistent with the record and well supported by medically acceptable clinical and laboratory diagnostic techniques.  Since the Court has already addressed the ALJ's finding regarding Dr. Marienfeld's alleged failure to set forth specific functional limitations, the only other support the ALJ offered as a good reason to discount Dr. Marienfeld's opinion is that it was missing a page.  (R. 25.) However, Dr. Marienfeld's opinion was complete but one page was attached separately and thus in a difference location of the record.  (R. 370-371, 656-658.)  The ALJ's comment makes it apparent that he did not review the entirety of Dr. Marienfeld's opinion and thus could not make an informed decision as to the weight the opinion should be afforded.

Since the ALJ violated the treating physician rule by failing to accord Dr. Marienfeld's opinion controlling weight and by failing to provide good reason for his decision to do so, the Court must remand.

## III. The ALJ's Findings at Step Five Are Supported By Substantial Evidence

Plaintiff asserts that the ALJ's findings at step five are unsupported by substantial evidence. (Pl. Br. 18.) Plaintiff asserts that the ALJ improperly relied on the testimony of vocational expert Warren Maxim as Mr. Maxim did not cite any sources supporting his testimony. (Pl. Br. 18-22.) Plaintiff also asserts that the ALJ's hypothetical to Mr. Maxim was not supported by substantial evidence. (Pl. Br. 22-24.) The Court disagrees.

### A. The ALJ did not improperly rely on the testimony of Mr. Maxim

At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the plaintiff can perform. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved." Id. (internal citations omitted) (alterations in original) (quoting Dumas v. Schweiker, 712 F.2d

1545, 1553-54 (2d Cir. 1983)) (citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)).

A vocational expert's failure to provide the scientific data supporting his or her conclusion as to the number of jobs available in the national economy may still be supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case.  It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record." Id.  While the refusal to present scientific data may or may not affect the credibility of the expert's testimony, the analysis "defers to the presiding ALJ, who has seen the hearing up close."  Id.

The vocational expert's credentials, history of testimony, ability to answer the ALJ and attorney's questions, and the alleged basis for his testimony are all relevant in providing substantial evidence for his opinion.  See id. at 1155.

The Second Circuit has held that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." McIntyre, 758 F.3d at 152.  "[T]he ALJ [may] reasonably credited [a vocational expert's] testimony, which was given on the basis of the expert's professional

experience and clinical judgment, and which was not undermined by any evidence in the record." Id.

In Crespo, the vocational expert identified available jobs based on a hypothetical person's limitations and the number of these available jobs in the national economy. Crespo v. Comm'r of Soc. Sec., No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *8 (D. Conn. Sept. 25, 2019). The ALJ relied on the vocational expert's testimony despite his failure to identify the source of the number of jobs. Id. The plaintiff's counsel examined the vocational expert and did not challenge the qualifications of the expert or ask about the number of jobs available. Id. The court determined that "the vocational expert's failure to identify the sources of her job-numbers data does not dispel the existence of substantial evidence for the ALJ's conclusion that Crespo could perform a substantial number of jobs that existed in the national economy." Id. at *9.

The facts presented here are almost identical to those in Crespo. The ALJ relied on Mr. Maxim's testimony despite his failure to provide a source for his testimony. (R. 35-36.) However, unlike Crespo, the ALJ did confirm with Mr. Maxim that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (R. 87.) Plaintiff's counsel did not object to Mr. Maxim's qualifications or to the number of jobs while at the hearing. See (R. 82, 85-87, 88.) As in Crespo, Mr. Maxim's

failure to provide a source for the number of jobs in the economy does not "dispel the existence of substantial evidence." Crespo, 2019 WL 4686763, at *9.

The ALJ properly relied on the testimony of the vocational expert.  Therefore, plaintiff is incorrect that the step five determination is not supported by substantial evidence *per se*. Plaintiff has failed to demonstrate that the ALJ's RFC determination is not supported by substantial evidence and thus the vocational expert's testimony was in error.  As such, the ALJ's step five findings are supported by substantial evidence.

> B. The ALJ's hypothetical was supported by substantial evidence

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence and therefore the hypothetical posed to Mr. Maxim was similarly not based on substantial evidence.  (Pl. Br. 22-24.)  Plaintiff asserts that the ALJ improperly assumed that plaintiff could lift up to 100 pounds, which amounts to two-thirds of plaintiff's body weight.  (Pl. Br. 24, n.56.)  The Court disagrees.

The ALJ determined that none of plaintiff's physical impairments resulted in severe medically determinable impairments.  (R. 18-20.)  Plaintiff does not challenge that his physical impairments were not severe medically determinable

impairments.  However, plaintiff does challenge the ALJ's physical RFC findings.  (Pl. Br. 23-24.)

Plaintiff's physical impairments include right ankle pain, a torn rotator cuff, lumbosacral, cervical, and thoracic pain, and left leg impairment.  (R. 19.)  Specifically, plaintiff asserts that there is no evidence to suggest that he can lift or carry 100 pounds for up to one third of the workday, as would be required for some work encompassed under all exertional levels. (Pl. Br. 24, n. 24.)  However, the ALJ is not required to find restrictions where the plaintiff fails to establish such a restriction.  See Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012).  Indeed, the failure to provide evidence establishing plaintiff's weightlifting restrictions is sufficient for the ALJ to reject such a restriction.  See id. at 153-154.

Plaintiff does not present any evidence that he is restricted in any way by what weight he can carry, but merely argues that lifting is "absurd" as 100 pounds is two thirds of his body weight.  (Pl. Br. 24, n. 24.)  Plaintiff's bald assertion is insufficient to establish any sort of weightlifting restriction.

Regardless, substantial evidence supports the ALJ's physical RFC finding.  Plaintiff's physical impairments were only reported as mild and required little to no treatment.  (R. 788, 803, 1038.)  When plaintiff originally reported to the

emergency room following an accident that caused his back pain,
plaintiff reported the pain was mild and only a five on a scale
of one to ten.  (R. 788.)  Plaintiff had a normal range of
motion in his back and hips.  (R. 790.)  However, when re-
evaluated in July 2015, plaintiff had improved about ninety
percent and had a normal range of motion, normal gait, and no
tenderness.  (R. 1086-89.)  Notably, on April 25, 2015 and
October 26, 2016, plaintiff reported no back pain and had a
normal range of motion.  (R. 744.)

On April 7, 2014, plaintiff reported to the emergency room
with left thigh pain.  (R. 803.)  However, he rated his pain as
mild and as a two on a scale of one to ten.  (R. 803.)
Plaintiff's examination was relatively normal and demonstrated
no decrease range of motion or strength.  (R. 804.)

Over ten months after plaintiff's DLI, plaintiff reported
to Yale New Haven Health Systems with right ankle pain.  (R.
1038.)  Plaintiff reported the pain as mild and was seen by an
orthopedic doctor and given a splint.  (R. 1041.)  Plaintiff was
told to treat the ankle with ice or a warm compress and to
follow up with his primary care doctor.  (R. 1058.)

None of the medical evidence suggests that plaintiff's
physical impairments required aggressive treatment or even long-
term treatment.  Plaintiff's limited treatment notes further
indicate that he achieved relief from his symptoms with minimal

visits and did not require further follow up.  Therefore, the record lacks evidence that plaintiff suffered any physical limitations.  As plaintiff fails to present any evidence demonstrating the contrary, the ALJ's RFC determination is supported by substantial evidence.

Plaintiff has not shown that the relevant evidence precludes a reasonable mind from finding that he could lift 100 pounds or that he had any physician restrictions.  Plaintiff has thus failed to demonstrate that the ALJ's determination is unsupported by substantial evidence.  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

### CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #27-2) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #28-2) is DENIED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  See 28 U.S.C. § 636(c)(3).

SO ORDERED this 13th day of July 2020, at Hartford, Connecticut.

_____/s/___ ____ _____
Robert A. Richardson
United States Magistrate Judge